UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DOUGLAS RICHARD TAYLOR, JR and
JESSICA SUE TAYLOR,

      Plaintiffs,

v

MICHIGAN STATE TROOPER COLE
HODGE, in his official and individual capacity;
and

IRON RIVER CITY POLICE CHIEF CURT
HARRINGTON, in his official and individual
capacity; and

IRON COUNTY SHERIFF'S DEPUTY
MICHAEL TULPPO, in his official and
individual capacity; and

IRON RIVER CITY POLICE OFFICER
AUSTIN GENEMAN, in his official and
individual capacity,

      Defendants.

No. 2:24-cv-00145
Lower Court File No. 24-6802-NZ

HON. ROBERT J. JONKER

MAG. MAARTEN VERMAAT

_____

Douglas Richard Taylor, Jr. and
Jessica Sue Taylor
Plaintiffs, In Pro Per
1415 16th Avenue
Iron River, MI 49935

Gretchen L. Olsen (P36619)
Nauts, McKinney, Dwaihy &
Beach, PLLC
Attorney for Defendants
Harrington and Geneman
38777 Six Mile Road, Suite 101
Livonia, MI 48152
(313) 964-4500
Gretchen.olsen@tnmglaw.com

_____

Tyler R. Kitzmiller (P86684)
Mary A. Waddell (P70545)
Attorneys for Defendant Hodge

Haider A. Kazim (P66146)
CUMMINGS, McCLOREY,
DAVIS & ACHO, P.L.C.

Michigan Department of Attorney General          Attorneys for Def. Deputy
State Operations Division                        Michael Tulppo
P.O. Box 30754                                   310 W. Front Street, Ste. 221
Lansing, MI  48909                               Traverse City, MI 9684
(517) 335-7573                                   (231) 922-1888
kitzmillert@michigan.gov                         hkazim@cmda-law.com
waddellm1@michigan.gov

_____/

**BRIEF IN SUPPORT OF DEFENDANT HODGE'S**
**<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

# TABLE OF CONTENTS

Page

Table of Contents...................................................................................................i

Concise Statement of Issues Presented ...............................................................ii

Controlling or Most Appropriate Authority.......................................................iii

Introduction .......................................................................................................... 1

Statement of Facts................................................................................................. 2

Legal Standard ...................................................................................................... 5

Argument ............................................................................................................... 7

I.      Section 1983 does not allow constitutional claims to be brought against
        a state official in his official capacity. ..................................................... 7

II.     Plaintiffs failed to state a Fourth Amendment claim or a state-law
        claim, and Hodge is entitled to qualified immunity on Plaintiffs' Fourth
        Amendment claims. .................................................................................... 8

        A.      Fourth Amendment Claims ............................................................. 8

                1.      Unreasonable Search and Seizure Claim .................................... 9

                2.      Excessive Force...................................................................... 12

                3.      Knock-And-Announce............................................................. 14

                4.      Trooper Hodge is entitled to qualified immunity....................... 17

        B.      State-Law Claims......................................................................... 17

Conclusion and Relief Requested....................................................................... 20

**CONCISE STATEMENT OF ISSUES PRESENTED**

1.    Officers are entitled to rely on a judicially secured warrant for immunity from illegal search and seizure claims unless an officer knowingly made false statements or omissions to the judge that were material to a finding of probable cause, or it was unreasonable for an officer to believe in the existence of probable cause.  Here, the warrant was issued by a neutral and detached magistrate and supported by probable cause, and Plaintiffs have not alleged that any statements in the warrant affidavit were false.  Should this Court dismiss Plaintiffs' Fourth Amendment claim for unreasonable search and seizure?

2.    A viable excessive force claim can be premised upon handcuffing if the excessively forceful handcuffing caused the plaintiff to suffer physical injury.  Here, Plaintiffs merely allege that a Michigan State Trooper put handcuffs on Douglas while he was compliant on the ground, but Plaintiffs fail to sufficiently allege that Douglas suffered a physical injury because of the handcuffing.  Should this Court dismiss Plaintiffs' Fourth Amendment claim for excessive force?

3.    The knock-and-announce rule does not require a knock or a set of "magic words"; instead, it requires only that the occupants of the residence to be searched know who is entering, why he is entering, and be given a reasonable time to surrender his privacy voluntarily.  Here, officers used force to open a door to the residence subject to the search warrant after the officers arrived at the property with their emergency lights activated, announced "Police, search warrant," and gave a reasonable opportunity for the occupants to answer the door.  Should this Court dismiss Plaintiffs' Fourth Amendment claim for a knock-and-announce violation?

4.    Qualified immunity should be afforded to state officials where their conduct did not violate a constitutional right, or the right was not clearly established at the time the conduct occurred.  The facts alleged in Plaintiffs' complaint do not give rise to Fourth Amendment violations.  Is Hodge entitled to qualified immunity?

5.    A federal court may exercise supplemental jurisdiction over state-law claims that form a common nucleus of operative fact with a federal claim, over which the federal court has subject matter jurisdiction.  Here, Plaintiffs' federal claims are subject to dismissal.  Should this Court exercise supplemental jurisdiction over the remaining state-law claims?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>*Authority*</u>:

42 U.S.C. § 1983

U.S. CONST. amend. IV

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

*Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)

*United States v. Ross*, 456 U.S. 798 (1982)

*Yancey v. Carroll Cty.*, 876 F.2d 1238 (6th Cir. 1989)

*United States v. Christian*, 925 F.3d 305 (6th Cir. 2019)

*Illinois v. Gates*, 462 U.S. 213 (1983)

*Neague v. Cynkar*, 258 F.3d 504 (2001)

*Heyne v. Metro Nashville Pub. Schs.*, 655 F.3d 556 (6th Cir. 2011)

*Muehler v. Mena*, 544 U.S. 93 (2005)

*United States v. Spikes*, 158 F.3d 913 (6th Cir. 1998)

*Bell v. City of Southfield*, 37 F.4th 362 (6th Cir. 2022)

*Estate of Carter v. City of Detroit*, 408 F.3d 305 (6th Cir. 1997)

*McClellan v. Cty. of Chippewa*, 634 F. Supp. 3d 404 (W.D. Mich. 2022)

*Adams v. Cleveland-Cliffs Iron Co.*, 237 Mich. App. 51 (1999)

*Dalley v. Dykema Gossett*, 287 Mich. App. 296 (2010)

**INTRODUCTION**

It is well known that the objective reasonableness standard applies when analyzing claims brought under the Fourth Amendment.  This case is no different. Plaintiffs (appearing pro se) allege that Michigan State Police Trooper Cole Hodge violated their Fourth Amendment rights when Hodge, along with other law enforcement officers, executed a search warrant at Plaintiffs' residence to search for Daniel Cooper, who was identified as a suspect in two Dollar General thefts, had an outstanding warrant for his arrest, and was observed at Plaintiffs' residence.

However, Hodge's conduct was not unreasonable.  The warrant was issued by a neutral and detached magistrate based upon an affidavit that Hodge signed under oath.  Law enforcement used force to open the door to the residence only after they had arrived at the property with their emergency lights activated, announced themselves as police, announced that they had a search warrant, and gave a reasonable opportunity for the occupants to answer the door.  And the three occupants of the residence were handcuffed, without issue, during the execution of the warrant.

Because it was not unreasonable for Hodge to believe that there was probable cause to search Plaintiffs' property for Cooper and because the search was performed in a reasonable manner, Plaintiffs cannot maintain their Fourth Amendment claims.  Furthermore, the valid search warrant precludes Plaintiffs' state-law claims for trespass and invasion of privacy.  Accordingly, this Court should dismiss Plaintiffs' complaint.

## STATEMENT OF FACTS

**Two thefts occur at Dollar General.**

On September 1, 2022, the Iron River Police Department responded to and investigated an incident of retail fraud that occurred at the Iron River Dollar General.  (*See* Exhibit A, MSP Incident Report, at 1.)  Upon review of the security camera footage at the store, Iron River Police Department identified the suspects as Daniel Cooper and Amber Henning.  (*See id.*)

Less than two weeks later, on September 12, 2022, Iron River City Police Chief Curt Harrington "was dispatched to the Iron River Dollar General Store for a reported retail fraud."  (Exhibit B, Search Warrant Affidavit, at 2.)[1]  The investigation revealed that Henning was again involved in the reported retail fraud.  (*See* Ex. A at 1.)  And security camera footage revealed that Henning left the store in a blue GMC pickup truck that was driven by a man who "had a dark beard and was wearing a hat and jacket with an insignia near the chest area."  (*Id.*)  "Iron River Police Department Officers believed [the man] was again, Daniel Cooper."  (*Id.*)

---

[1] When resolving a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), this Court may consider the complaint and any exhibits attached to Defendant's motion so long as the exhibits are referred to in the complaint and are central to the claims therein.  Because Plaintiffs' claims pertain to the legality of the search and reference the search warrant, the affidavit and search warrant can be considered by this court in resolving Defendant's motion.  *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Michigan State Police Trooper Cole Hodge, who was assigned to the Upper Peninsula Substance Enforcement Team (UPSET),[2] "reviewed the security camera footage from Dollar General with Chief Harrington on [September 12, 2022]" and identified the man at the Dollar General as Cooper.  (Ex. B at 2.)  Although Hodge knew Cooper and Henning "from previous investigations while working at the Michigan State Iron Mountain Post and UPSET," Hodge further "confirmed the identity of [Cooper] by looking at a photo of him in LEIN."[3]  (Ex. B at 2.) Additionally, when Hodge searched Cooper in the LEIN, Hodge learned that Cooper "has a felony warrant out of Dickinson County Michigan for forfeiting or [a]bsconding bond pursuant to Michigan Compiled Law 750.199A," and the warrant had a nationwide pickup radius.  (*Id.*)

Shortly after the retail fraud incident on September 12, 2022, the blue GMC pickup truck was observed at "1415 16th Avenue, Iron River, MI" (the "property"). (Ex. B at 2; *see also* Ex. A at 1.)  During surveillance of the property, one officer "observed Daniel Cooper open the front door on the porch of 1415 16th Avenue, Iron River to let a dog inside," and another officer "observed Daniel Cooper through the kitchen window."  (Ex. B at 2.)  The officers "made identifications based off

[2] The UPSET is "a multi-jurisdictional drug task force comprised of local, state, and federal law enforcement agencies."  (Ex. B at 1.)

[3] "LEIN" is an acronym that stands for "Law Enforcement Information Network."  It is "a statewide computerized information system" that was developed with the goal of "assist[ing] the criminal justice community in the performance of its duties by providing and maintaining a computerized filing system of accurate and timely documented criminal justice information readily available to all criminal justice agencies."  *See* Michigan State Police, *Law Enforcement Information Network (LEIN),* https://www.michigan.gov/msp/le/lein (last visited Oct. 25, 2024).

photographs they were provided from LEIN and Dollar General security footage."
(*Id.*)

### Hodge completes a search warrant affidavit and obtains a warrant.

On the same day as the September 12, 2022 retail fraud incident, Hodge swore to the contents of an affidavit for a search warrant before a state Magistrate in Iron County, Michigan.  (*See* Ex. B.)  Hodge's affidavit contained the above factual allegations regarding the September 12th retail fraud and the subsequent identification of the male suspect as Cooper, who had an outstanding felony warrant for his arrest.  (*See id.*)  Hodge further stated in his affidavit that he knows "from training and experience [that] LEIN is a tool used daily by law enforcement to identify persons and that photos contained within LEIN come from driver[']s license photos."  (*Id.* at 2.)  As a result of Hodge's assertions, a search warrant was issued to search for Cooper at 1415 16th Avenue, Iron River, Michigan and to arrest Cooper.  (*See* Exhibit C, Search Warrant.)

### Officers search the property.

At approximately 11 p.m. on September 12, 2022, Hodge, along with other officers, executed the search warrant.  (*See* Ex. A at 2.)  Officers arrived at the property with emergency lights activated on at least one patrol vehicle and parked their vehicles in the driveway of the residence.  (*See* Exhibit D, Body-Worn Camera, at 00:00–00:40.)[4]  After the officers established their presence on the property, a

---

[4] The body-worn camera video is from an officer who was with the Iron County Sheriff's Office.  There is no body-worn camera video from Hodge during this search.

group of officers approached a door to the residence and made three announcements of "Police, search warrant." (*Id.*, at 00:42–00:50.)  An officer also ordered the residents to "open the door." (*Id.*, at 00:45–00:46.)  When no one answered the door, the officers made a forced entry through the door and into the residence to conduct the search. (*Id.*, at 00:48–01:00.)

The occupants of the residence at the time of the search included Douglas, Jessica,[5] and Henning. (*See* Ex. A at 3–4.)  The officers did not locate Cooper during the search. (Ex. A at 3.)

**Plaintiffs' Complaint**

Plaintiffs appear to bring several Fourth Amendment claims under 42 U.S.C. § 1983: (1) unreasonable search and seizure (ECF No. 8-2, PageID.49); (2) excessive use of force (*id.*, PageID.50); and (3) a knock-and-announce violation (*id.*, PageID.50).  Additionally, Plaintiffs appear to bring state-law claims for trespass and invasion of privacy. (*See id.*, PageID.49–50.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(c) authorizes a court to dismiss a claim for relief "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (quotation marks and citation omitted).  In considering a motion for judgment on the pleadings, a court considers the pleadings,

---

[5] Because Plaintiffs share the same last name, this motion will refer to Plaintiffs by their first name.

which consist of the complaint and the answers.  *See* Fed. R. Civ. P. 12(c); Fed. R.

Civ. P. 7(a) (defining pleadings to include both the complaint and the answer).

Additionally, a court may also consider "documents incorporated into the complaint

by reference."  *Bolton v. Dep't of the Navy Bd. for Corr. of Naval Records*, 914 F.3d

401, 406 (6th Cir. 2019).

The same pleading requirements necessary to survive a Rule 12(b)(6) motion

apply to a motion for judgment on the pleadings under Rule 12(c).  *See Tucker v.*

*Middleburg-Legacy Place*, 539 F.3d 545, 550 (2008).  Thus, to survive a motion for

judgment on the pleadings, a claim's "[f]actual allegations must be enough to raise a

right to relief above the speculative level on the assumption that all of the

allegations in the complaint are true."  *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555 (2007).  However, this assumption that all the complaint's allegations are

true does not apply to legal conclusions or to legal conclusions cloaked as fact."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To state a valid claim, a complaint must contain direct or inferential

allegations respecting all the material elements under some viable legal theory."

*Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336–37 (6th

Cir. 2007).  "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Similarly, a

complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'"

does not suffice.  *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## ARGUMENT

### I.    Section 1983 does not allow constitutional claims to be brought against a state official in his official capacity.

Plaintiffs allege Fourth Amendment violations as grounds for claims under 42 U.S.C. § 1983.  Section 1983 provides, in part:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .  [42 USC 1983 (emphasis added).]

However, the United States Supreme Court has held "that neither a State *nor its officials acting in their official capacities* are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (emphasis added).

Here, Plaintiffs brought a § 1983 action against Trooper Hodge for monetary damages.  (*See* ECF No. 8-2, PageID.51.)  But to the extent that Plaintiffs brought their claims against Trooper Hodge in his official capacity, he does not qualify as a "person" under 42 U.S.C. § 1983.  *See Will*, 491 U.S. at 71.  Accordingly, Plaintiffs cannot maintain their § 1983 claims against Trooper Hodge in his official capacity.

## II.    Plaintiffs failed to state a Fourth Amendment claim or a state-law claim, and Hodge is entitled to qualified immunity on Plaintiffs' Fourth Amendment claims.

Plaintiffs allege federal constitutional claims under the Fourth Amendment for unreasonable search and seizure, excessive force, and a knock-and-announce violation, and state-law claims of intentional trespass and invasion of privacy. (ECF No. 8-2, PageID.49–50.)  All claims are subject to dismissal because Plaintiffs failed to plead facts showing that either Plaintiff is entitled to relief.  *See Iqbal*, 556 at 679; Fed. R. Civ. P. 8(a)(2).

### A.    Fourth Amendment Claims

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

8

Plaintiffs identify the Fourth Amendment as the foundation for their federal claims, including unreasonable search and seizure, excessive force, and a knock-and-announce violation.  (*See* ECF No. 8-2, PageID.46.)

## 1.  Unreasonable Search and Seizure Claim

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. amend. IV.  Under the Fourth Amendment, no search warrant shall issue without probable cause, and it prohibits unreasonable searches and seizures.  *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006); *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000).  To state a claim for relief under the Fourth Amendment, a plaintiff must allege facts showing that the Defendants' actions (1) constituted a "search" or "seizure" within the meaning of the Fourth Amendment, and (2) were "unreasonable" in light of the surrounding circumstances. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 595–600 (1989).

Here, Plaintiffs allege that Hodge, along with other officers, executed an "invalid search warrant" of Plaintiffs' property located at 1415 16th Avenue, Iron River, Michigan.  (ECF No. 8-2, PageID.49.)  Yet, the search warrant was issued by a magistrate judge, which is the clearest indication that the officers acted in an obviously reasonable manner.  *See United States v. Ross*, 456 U.S. 798, 823 n. 32 (1982) (stating that "a warrant issued by a magistrate normally suffices to establish" that a law enforcement officer has "acted in good faith in conducting the search"); *Stone v. Powell*, 428 U.S. 465, 498 (1976) (Burger, C. J., concurring)

("[once] the warrant issues, there is literally nothing more that the policeman can do in seeking to comply with the law").

Indeed, generally, police officers are "entitled to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure," unless the officer knowingly made false statements and omissions to the judge such that the warrant would not have been otherwise issued or it was unreasonable for the officer to believe in the existence of probable cause because "the warrant [was] so lacking in indicia of probable cause." *Yancey v. Carroll Cty.*, 876 F.2d 1238, 1243–1244 (6th Cir. 1989) (citations omitted).  Because neither exception applies here, Hodge is entitled to rely on the judicially secured warrant for immunity from Plaintiffs' § 1983 action for illegal search and seizure.

At most, Plaintiffs appear to question the existence of probable cause to issue the search warrant.  For instance, Plaintiffs allege that the Iron River City Police Chief identified Cooper by viewing the Dollar General video footage and relayed the information to Hodge, but "[t]he Police Chief failed to provide any details on how he was able to physically identify [Cooper]."  (*Id.*, PageID.48.)  Additionally, Plaintiffs indicate that the searched property was owned by Plaintiffs and that a Harley Davidson that was allegedly in the driveway of the property was "owned and registered to the Plaintiff Douglas Taylor."  (*Id.*)  Furthermore, Plaintiffs allege that Hodge pursued a search warrant "based solely on his claimed physical identification of [Cooper]."  (*Id.*, PageID.49.)

But "[t]ime and again the Supreme Court has emphasized that [p]robable cause is not a high bar to clear." *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (second alteration in original; quotation marks and citations omitted). And Hodge's affidavit resolves any question about the existence of probable cause because Hodge reviewed the security camera footage from Dollar General, confirmed the identify of Cooper by looking at a photo of him in LEIN, and observed that Cooper had an active warrant for his arrest with a nationwide pickup radius. (*See* Ex. B at 2.)  And after law enforcement observed the blue GMC pickup truck, which was used by the theft suspects to leave the Dollar General, at 1415 16th Avenue, Iron River, Michigan, two other officers identified Cooper as an individual who was at the property based on photographs that they were provided from LEIN and the Dollar General security footage.  (Ex. B at 2.)  Thus, based on a totality of the circumstances, the affidavit demonstrated that there was a fair probability that Cooper would be found at the property.  *See Illinois v. Gates*, 462 U.S. 213, 238 (1983) (stating that the affidavit need only show, using a totality of the circumstances test, that there is "a fair probability . . . evidence of a crime will be found in a particular place").

Accordingly, Plaintiffs cannot maintain their Fourth Amendment claim for unlawful search and seizure because the search warrant was issued by a detached and neutral magistrate and supported by probable cause.  *See United States v. Beals*, 698 F.3d 248, 264 (6th Cir. 2012) (stating that a search warrant must be

11

issued by neutral and detached magistrates and must be issued only upon a finding

of probable cause).

### 2. Excessive Force

Plaintiffs allege that "Defendants" used excessive force when they performed

the search of the property.  (*See* ECF No. 8-2, PageID.50.)  The Fourth

Amendment's unreasonable seizure jurisprudence applies when analyzing such a

claim.  *See Morrison v. Bd. of Trustees Of Green Twp.*, 583 F.3d 394, 400 (6th Cir.

2009).  Thus, "[w]hether an officer . . . exerted excessive force during the course of

[a] seizure is determined under an 'objective reasonableness' standard."  *Id.*

(citation omitted).

Here, Plaintiffs allegations fail to clearly indicate the basis for their excessive

force claim.  However, it appears that Plaintiffs' excessive force claim may be

premised on the handcuffing of Douglas.  (*See* ECF No. 8-2, PageID.49.)

Specifically, Plaintiffs allege: "A Michigan State Trooper put handcuffs on the

Plaintiff Douglas Taylor while he was compliant on the ground without any cause

and in a manner that caused Plaintiff to suffer damages."  (*Id.*)  "[A] viable

excessive force claim can be premised upon handcuffing."  *Neague v. Cynkar*, 258

F.3d 504, 507 (2001).

However, Plaintiffs fail to state a *viable* excessive force claim for several

reasons.  First, Plaintiffs fail to identify the Michigan State Trooper that placed the

handcuffs on Douglas.  *See Heyne v. Metro Nashville Pub. Schs.*, 655 F.3d 556, 564

(6th Cir. 2011) (stating that as a threshold matter, "damage claims against

government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right") (quotation marks and citation omitted).  Second, Plaintiffs fail to state a viable claim because the mere handcuffing of an individual is insufficient as a matter of law to state a claim of excessive force under the Fourth Amendment.  *See Neague*, 258 F.3d at 508 (stating that "when there is no allegation of physical injury, the handcuffing of an individual incident to a lawful arrest is insufficient as a matter of law to state a claim of excessive force under the Fourth Amendment").  Indeed, Plaintiffs merely state that a trooper put handcuffs on Douglas "while he was compliant on the ground without any cause."  (ECF No. 8-2, PageID.49.)  The use of handcuffs to detain multiple occupants during the execution of a search warrant is not unreasonable.  *See Muehler v. Mena*, 544 U.S. 93, 100 (2005) (stating that "the need to detain multiple occupants made the use of handcuffs all the more reasonable").

And although Plaintiffs indicate that Douglas was handcuffed "in a manner that caused Plaintiff to suffer damages," Plaintiffs fail to offer any additional factual allegations as to why or how the handcuffing caused Douglas to experience a physical injury.  (*See* ECF No. 8-2, PageID.48–50.)  Thus, even though pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers, Plaintiffs' threadbare recitals of the elements of an excessive force claim supported by mere conclusory statements are not enough to raise a right to relief above the speculative level on the assumption that all the allegations are true.  *See*

13

*Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678; *Heyward v. Cooper*, 88 F.4th 648, 653–54 (6th Cir. 2023).

### 3. Knock-And-Announce

Plaintiffs allege "[t]hat on September 12, 2022, Defendants Cole Hodge and Michael Tulppo physically entered the Plaintiff's home at approximately 11:00 p.m. without first knocking and announcing their legal presence and without permission kicked down the door to enter." (ECF No. 8-2, PageID.50.) However, uncontroverted video evidence shows otherwise.

"The 'knock-and-announce rule' reflects the 'ancient' common law principle that 'law enforcement officers must announce their presence and provide residents an opportunity to open the door." *United States v. Ross*, 701 F. Supp. 3d 657, 668 (E.D. Mich. 2023) (quoting *Hudson v. Michigan*, 547 U.S. 586, 589 (2006)). But "[d]espite its title, the knock-and-announce rule does not *require* a knock or a set of 'magic words;' rather, it requires 'only that the occupant 'know who is entering, why he is entering, and be given a reasonable opportunity to surrender his privacy voluntarily.''" *Id.* (emphasis in original) (quoting *United States v. Hardin*, 106 F. App'x 442, 446 (6th Cir. 2004)); *see also United States v. Spikes*, 158 F.3d 913, 925 (6th Cir. 1998).

Here, the video evidence shows that the officers were present at the property for at least 40 seconds before a group of officers approached an entrance to the residence and announced themselves as police and that they have a search

14

warrant.[6]  (*Id.*, at 00:00–00:48.)  After the officers made three announcements that

they were police and ordered the residents to open the door, the officers used force

to open the door and enter the residence.  (*Id.*, at 00:43–01:00.)  Approximately 6–7

seconds elapsed from when the officers announced themselves until they entered

the residence.  (*Id.*, at 00:43–00:50.)  However, there is no bright-line rule for how

long officers must wait before entering a residence after announcing their presence.

*See Spikes*, 158 F.3d at 926 (stating that the court declined to create a bright-line

rule for every case because the governing standard is whether the officers' overall

actions were reasonable).

Instead, a court must engage in a case-by-case analysis of the facts and

circumstances.  *See id.*  Here, officers executed the search during the evening, at

approximately 11 p.m.  (*See* ECF No. 8-2, PageID.49.)  Although the search occurred

during the evening, some of the lights were on inside the residence when the officers

arrived at the property.  (Ex. D at 00:27–00:1:00.)[7]  Additionally, when officers

arrived at the property, the uncontroverted video evidence shows that the officers

had the emergency lights activated on their vehicles and the vehicles were parked

in front of the residence.  (*See id.* at 00:00–00:15.)  Thus, although Plaintiffs allege

---

[6] This Court may consider uncontroverted video evidence at the motion-to-dismiss
stage when considering the defense of qualified immunity.  *See Bell v. City of
Southfield*, 37 F.4th 362, 364 (6th Cir. 2022) (stating that uncontroverted video
evidence should be considered at the motion-to-dismiss stage to resolve the question
of qualified immunity because officers are entitled to qualified immunity at the
earliest possible stage of litigation).

[7] As the officer wearing the body camera waits outside the residence, it can be
observed that light is emanating from a window of the residence.

that they "were unaware that the police were outside their home and were asleep on the couch," (ECF No. 8-2, PageID.50), the circumstances did not give officers reason to believe that a prompt response from the homeowner would be unlikely.  *See Spikes*, 158 F.3d at 927 (stating that when police have "reason to believe that a prompt response from the homeowner would be *unlikely*, the length of time the officers should wait *increases*") (emphasis added).  Therefore, the officers did not have to wait as long to enter the residence as if the circumstances were such that the homeowner would be unlikely to promptly open the door.  Moreover, although the officers only waited approximately seven seconds to enter the residence when they announced their presence at the door, the officers had already been present on the scene for over 40 seconds.

Given that the officers arrived on scene with their emergency lights activated, that lights were on inside the residence, that at least 40 seconds elapsed before the officers approached a door to the residence, that officers announced who they were and why they were entering, and that officers gave a reasonable opportunity for the occupants to answer the door, Hodge did not commit a knock-and-announce violation.[8]  *See Ross*, 701 F. Supp. 3d 657, 668.  Therefore, Plaintiffs failed to state a plausible claim for relief.

---

[8] Assuming, as alleged by Plaintiffs, that "Hodge . . . executed the invalid search warrant by breaking down the door of the Plaintiff's home."  (ECF No. 8-2, PageID.49.)

**4. Trooper Hodge is entitled to qualified immunity.**

To prevail on their Fourth Amendment claims, Plaintiffs must overcome the defense of qualified immunity.  This Court employs a two-step analysis in determining whether a government official is entitled to qualified immunity: "(1) whether, considering the allegations in a light most favorable to the injured party, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310–11 (6th Cir. 1997) (citation omitted).  Courts may exercise their sound discretion in deciding which of the two prongs should be addressed first in light of circumstances in the particular case at hand.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As explained in Parts II.A.1–3, Plaintiffs have failed to state a claim for unreasonable search and seizure, excessive force, or a knock-and-announce violation.  Accordingly, no constitutional right was violated.  Moreover, no law has clearly established that it is a violation of the Fourth Amendment for an officer to execute a valid search warrant, to use handcuffs to detain multiple people during the execution of a search warrant, or to use force to enter a place to be searched after giving notice and a reasonable opportunity for the occupants to answer the door.  Therefore, Hodge is entitled to qualified immunity on Plaintiffs' Fourth Amendment claims and the claims should be dismissed.

**B.    State-Law Claims**

Plaintiffs appear to assert two state-law claims: (1) trespass and (2) invasion of privacy.  (ECF No. 8-2, PageID.49–50.)  However, as an initial matter, both

claims should be dismissed following the dismissal of Plaintiffs' constitutional claims because the interests of judicial economy do not warrant this Court exercising jurisdiction over state-law claims.  *See McClellan v. Cty. of Chippewa*, 634 F. Supp. 3d 404, 422–23 (W.D. Mich. 2022) ("'Generally, once a federal court has dismissed a plaintiff's federal law claim[s], it should not reach state law claims.'") (quoting *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007)). Nonetheless, even if this Court decided to exercise jurisdiction over the state-law claims, Plaintiffs failed to plead a viable claim of trespass or invasion of privacy.

"[T]respass is an invasion of the plaintiff's interest in the exclusive possession of his land." *Adams v. Cleveland-Cliffs Iron Co.*, 237 Mich. App. 51, 59 (1999) (alteration in original) (quotation marks and citation omitted).  "Recovery for trespass to land in Michigan is available only upon proof of an *unauthorized* direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Id.* at 67 (emphasis added). Alternatively, invasion of privacy includes "four distinct tort theories: (1) the intrusion upon another's seclusion or solitude, or into another's private affairs; (2) a public disclosure of private facts about the individual; (3) publicity that places someone in a false light in the public eye; and (4) the appropriation of another's likeness for the defendant's advantage." *Dalley v. Dykema Gossett*, 287 Mich. App. 296, 306 (2010).

Here, Plaintiffs' trespass and invasion of privacy claims appear to be premised on Hodge's entry onto Plaintiffs' property and into their residence.  But

Plaintiffs cannot show that Hodge's "intrusion" onto Plaintiffs' property and into Plaintiffs' residence was "unauthorized" because Hodge's entry was pursuant to a valid search warrant. *Supra* Part II.A.1. Furthermore, Plaintiffs' complaint fails to plead factual content showing that Hodge's entry was otherwise unauthorized. (*See* ECF No. 8-2, PageID.48–50.) Accordingly, Plaintiffs' state-law claims lack facial plausibility. *See Iqbal*, 556 U.S. at 679. Therefore, Plaintiffs failed to state a viable claim of trespass or invasion of privacy.

## CONCLUSION AND RELIEF REQUESTED

Defendant Hodge respectfully requests that this Court (1) grant this motion,

(2) dismiss Plaintiffs' complaint in its entirety, and (3) grant such additional and

further relief as this Court deems appropriate.

Respectfully submitted,

/s/ *Tyler R. Kitzmiller*
Tyler R. Kitzmiller
Assistant Attorney General
Attorney for Defendant Hodge
Michigan Dep't of Atty General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
517.335.7573
kitzmillert@michigan.gov
P86684

Dated:  November 19, 2024

2024-0411525-B